Case number 10-2312, Pupil versus Fountain. Good morning, Your Honours. I'm Jonathan Yeasting on behalf of Mr. Fountain. Good morning, Your Honours. John Walters representing the Pupil State Bill of Rights. I'd like to move on to about two minutes for the rebuttal. It sounds good. Let's proceed. May it please the Court. At issue is whether Mr. Fountain's pro se pleading is so frivolous that he should be deprived of the assistance of counsel for further post-conviction proceedings. I assume the Court is familiar with the basic facts here. There was a Fourth Amendment suppression hearing. The results of that suppression hearing were key evidence in this murder case. At that suppression hearing, Mr. Fountain pleads that the detective lied when he stated that he saw a bloodstain on the backseat of Mr. Fountain's vehicle. Did he say it's something that appeared to be as opposed to there is? Yes. There is a distinction, sir? There is no distinction when we're considering the due process structure. I mean, you're saying to us that's a fact. Yes, Your Honor. The actual language was from the officer is that he noticed what appeared to be dried bloodstains on the backseat of the vehicle. The Court then took that to understand that Detective McVicker's testimony was that there was in fact dried bloodstains on the seat of the vehicle. Does the judge ever say that? Yes, Your Honor. The judge referred three times in making its ruling to bloodstains on the backseat of the vehicle. And states that when McVicker shone his light in there and saw that there was dried blood. So certainly, if there is any fudge room between a mere appearance of a bloodstain and an understanding of a bloodstain, that line is crossed by the judge's findings. More broadly, Your Honor, I'd point to cases like people of the only or an entire history of the Illinois Supreme Court saying that questions of materiality don't hinge upon such gossamer distinctions. This goes back even to the fifties of the U.S. Supreme Court in Alcaservie, Texas, where what we're really not concerned about is a very literal notion of whether somebody lied, as we might be in a perjury trial, but whether they created a misleading impression. And here, given that the Court understood McVicker's testimony. I'm sorry, but you're saying what the judge's interpretation of what an officer said. An officer said he saw something that appeared to be blood. Of course, his eyes cannot make a chemical analysis of what a stain looked. I mean, he gave an opinion of what he thought something was. You're saying that the judge's interpretation of him saying that amounts to the officer lying? Well, the state certainly didn't correct the misleading impressions. Did they have the results of the DNA then? No, I'm asking, did they? The state, in all likelihood, I don't know. Probably not. It was a few weeks before trial, so I assume they would have had, if not the results of the DNA, the results of the forensic examiner's analysis of the backseat of the car. Even if the prosecutor didn't have, the second the State's agent, Mary Cosgrove, looked at that backseat of the car and found not just no blood stain, but as she testifies, no stain at all on the backseat of that car, then the State certainly would have had that duty to disclose. Well, did they look everywhere? I mean, did they take out every part of the backseat of the car or just a portion of it? Well, the indication, Your Honor, is they went over the backseat. And Cosgrove's testimony is that they went over the backseat of the car in some detail, and then they removed some portion of the backseat. Your Honor, but of course, this is where I submit that standards of pleading end up fairly important. Mr. Fountain need not prove his claim now. He need not plead every element of the claim now. All he has to do is plead the gist of a claim that doesn't have, that isn't fanciful or delusional on these questions. Did your client ever even say that there was no blood in the backseat? The client's statement is that Mick Vicker lied when he said he saw a blood stain. No, he said he lied. Yes. Okay. In order for there to be a lie, wouldn't he have to say there was no blood in the backseat? Or it did not appear to be any blood in the backseat? I mean, your client never said any of those things, did he? Well, I think it's inherent in his statement that he lied when he saw the blood stain, especially when viewed in light of Cosgrove's testimony that there was no stain there at all. So you're saying when he said that he lied, we can infer that he meant that there wasn't any? That is, I think that's a natural implication of Hodges and Brown and all these standards on how we construe post-conviction petitions. If we construe it in a way that generates the claim, we were probably supposed to do so. I mean, are we supposed to read things into post-conviction petitions? In fact, I'd submit that dealing with Supreme Court and people to be brown requires us to in certain circumstances. Because, I mean, in that case, that was a case where someone alleged ineffective assistance of counsel, yet completely left off any claim of prejudice. And the courts said that that should go through anyway. Well, that case had nothing to do with the facts of this case. Well, it's a case that, well, of course the facts of all cases are different, but it's a case that certainly speaks to the interpretation of post-conviction petitions, and it's a recent one for the Illinois Supreme Court, Your Honor. And I would, you know, further say I don't know how more clearly somebody can plead that the police officer lied during a suppression hearing than somebody said. He's saying there wasn't any, and therefore he lied. But he doesn't say there wasn't any. He doesn't say it didn't appear that there wasn't any. He doesn't say anything except he lied. Well, he says that he lied. What did he lie about? In the petition, Mr. Fountain attests that he lied when he saw a bloodstain. What appeared to be a bloodstain. So, I mean, yeah, that's the claim, Your Honor, that he lied when he saw what appeared to be a bloodstain. And what evidence is in the record that there was no stain in the backseat? Right, like the chocolate ice cream in my car. I'm sorry? I said like the chocolate ice cream in my car. I'm looking, other than this little portion of Cosgrove's testimony, is there evidence in the record that there's no stains in the backseat? Well, here's what the trial record gives us about that. We do have the brief portion of Cosgrove's testimony. It's the only time the backseat, whether there's a stain on the backseat is mentioned at trial. Somewhat suspiciously, we also have Mick Vicker's partner. Mick Vicker himself is not called by the State at trial. Instead, they call Mick Vicker's partner. Mick Vicker's partner simply testifies that he couldn't see anything at all. In addition to that, of course, now on the post-conviction, we have Mr. Found's attestation that there is, that Mick Vicker in fact lied when he said there is a stain on the backseat. Let me ask you another question. Let's assume the detective didn't testify at all. Isn't there enough evidence here to convict to begin with? It's a warrantless arrest, Your Honor. Without the detective's testimony, certainly the suppression would be granted. If I understand your question to say, in addition to everything that would be suppressed, is there enough left over? Well, the question is whether there would be a reasonable, whether even at this stage whether it's arguable that there would be a reasonably left over. I mean, didn't he admit to two people that he killed a woman? Well, first we have to look at, I suggest we look at what is suppressed here. The State's most important evidence at trial is the trace evidence in the DNA that's found in the trunk of the vehicle. I mean, that's really something that if the seizure is unlawful, that would be suppressible. I'm just sorry. I haven't read the whole record, but what I have read is that before they stop him, they've talked to someone who says, yes, he's dating her. Yes, they argued. Yes, I mean, and the cops know she's shot with a shotgun. Yes, he has a shotgun in his car. And yes, the last person we saw her with was him, her getting into his car. You don't think that that's enough to stop him and, I mean, for probable cause to. The trial court found that that only elevated things to reasonable suspicion. Frankly, Your Honor, I think it would be somewhat. I mean, we're not bound by what the trial court said. It would be true that we would not be bound by it, but it would be somewhat extravagant reasoning to first have to defer to what is tainted here, which is the court's finding that McVicker is credible. I think the court very well might have decided differently had it, in fact, found out that McVicker was testifying falsely as to one fact. I'm sorry. I don't mean to interrupt you, but if I looked back at what Cosgrove said, first we have an officer who said he saw something that appeared to be bloodstained, not that there was blood on the cushion. And looking at Cosgrove's testimony, it doesn't seem to me that Cosgrove ever said that there was not a stain on the back seat. The question is, did you not identify any stains there? And the person said, no, I didn't. I don't know what that means. No, I didn't identify any stains as blood. No, I didn't see any stains. Oh, he's not ever asked, did he ever see any stains from what I can see from this testimony. And I would suggest, Your Honor, at most it creates ambiguity, which is the fact question that would need to be resolved in an evidentiary hearing. Given, like, the posture one right now, it might be one that could be resolved fairly quickly, because this is the sort of thing that, of course, a prosecution doesn't have discovery materials available to them. The answer is probably in some photo or just a brief conversation with Cosgrove in the discovery materials, and we can solve one way or the other whether Fountain's statement is correct that this detective lied. Your Honor, I'd like to reserve, unless you have another question, I'd like to reserve the last couple minutes of my time. Thank you. Good morning, Your Honors. I'd like to focus on two points, forfeiture and materiality in this case. Forfeiture, what's a really critical fact in this case is that defense counsel was the one that was cross-examining Ms. Cosgrove, the forensic investigator that you looked at, Justice Lampkin. It was defense counsel that had this report that cross-examined the forensic investigator at trial. Now, that is critical. That blows out of the water defendants' claims on a lot of different levels, and one of them is forfeiture, because a motion to suppress is never final until there's been a verdict in the case. It is only final if evidence is suppressed and the state can appeal it to Your Honors. But in a case where the evidence isn't suppressed, it's not final. The motion can be looked at in the context of the trial. The motion can be reopened in the context of the evidence that's produced at trial. Defense counsel had every opportunity to raise this issue at trial and didn't, for very good reason, because he would have lost. She would have lost. I'm sorry, I think it was Dana Woodbury, the public defender in this case. So defense counsel didn't raise this issue at trial. Defense counsel didn't raise this issue on direct appeal. Why didn't defense counsel raise this issue on direct appeal? It really begs the question, because everything that defendants are relying on is the record from the direct appeal. What is new that defendants are relying on that he didn't have already? He's relying on Forensic Investigator Cosgrove, and he's relying on Detective McVicker's testimony. One sentence, essentially, from Detective McVicker's pages and pages of testimony at the motion to suppress. That is some substance that defendants claim. That's what it boils down to. This was an issue that could have been raised on direct appeal. I submitted the direct appeal as part of an appendix to my brief. You saw it was raised there. It was one issue, and this issue wasn't it. Defendant had multiple chances to raise this issue. There was no knowing use of perjured testimony in this case. Knowing use of perjured testimony is akin to a Brady violation, to the prosecution supposedly hiding the evidence, hiding the ball. Well, that didn't happen in this case. Defense counsel had this information at trial, didn't use it. Defendant raises a series of novel objections to forfeiture in his brief. None of them merit any real substance under the law. The only thing that he points to is that some of his cases refer to fundamental fairness. But I submit that in all the cases that he cited to you, whether it's Jimerson, Ollinger, Perkins, Burns, Smith, any of the cases that he cited to, all these cases were cases where the information wasn't available at trial. There was knowing use of perjured testimony that was, in essence, a sort of Brady violation because this evidence wasn't at trial. And it only came to light maybe at a post-trial motion or subsequent to the direct appeal even being filed, or even subsequent to a first PC petition being filed. This is a clearly forfeited issue. I just want to touch briefly on materiality. Even if you grant everything the defendant is asking for, you say, you know what, Detective McVicker, his testimony would just have been completely obliterated by this one inconsistency in his statement. Even if you buy that, and even if you buy, well, the judge would have granted the suppression hearing, would have granted the suppression hearing in favor of the defense, what does that gain the defendant? What does he gain? Look at the end of the suppression hearing. Judge Kirby asked defense counsel, what gets suppressed? If I grant your motion, what gets suppressed in this case? Was anything recovered? No. Was anything recovered from the trunk as a result of this motion? No. Nothing was recovered at this time. What happened subsequent to the arrest and the seizure of the car in this case? The police went out and they got search warrants. This is not a warrantless case. They got warrants to search the defendant's home. They got warrants to search the car. The car in this case, we're talking about Forensic Investigator Cosgrove, she doesn't process this car until two days after the police obtain a search warrant, signed by Judge Masoleo. What's really interesting about that search warrant is that if you look at, and it's in the record, you look at the affidavit for search warrant in this case, and all the information is pretty much the same as what Detective McVicker testified to, except there isn't any mention of bloodstain testimony. But Judge Masoleo found probable cause. So the information that was submitted, the information that was submitted at the motion to suppress was more than ample. Whether you look at the bloodstain evidence or not, it was more than ample to solve the question of whether there was probable cause in this case. As the cases that I set out in my briefs stand, look at one of the most primary facts in this case leading up to probable cause, and it's one of the things that the judge mentioned himself, and I'm just going to mention this point and one other point, and I'm really interested in any questions that you have. The judge said several times what was really important to him was that the victim was the last person seen with the defendant. She was the last person seen with the defendant getting into his car, and then she's dead. That's a pretty critical fact when you're looking at whether there's probable cause in a case. And yes, whatever the judge's reasoning was at the trial court doesn't matter. It's de novo anyway. It's this court that gets to determine whether the facts as applied amount to probable cause or not. The judge's reasoning below doesn't matter. The defendant is totally reliant on that reasoning below and some comments about bloodstain from an officer shining a flashlight in a car at midnight and what he thought he saw in the backseat of the car. And as far as Investigator Cosgrove goes, she removed a seat cushion, a portion of a seat cushion in the backseat. She didn't remove the whole backseat. There's nothing contrary to the defendant's argument to say that she did a thorough search of the backseat. What was she focused on? She was focused on the trunk where, lo and behold, there were multiple sites of the victim's blood all over the trunk of that car. And that evidence was recovered as a result of a search warrant signed by Judge Massileo. And that was really the critical evidence in this case, the victim's blood all over the defendant's car. There's one point the defendant makes. I just want to make this one point and then, unless you have any questions, I'm going to sit down. There's one point the defendant makes about the law, and it's really critical. It's a dangerous misstatement of the law, almost, if taken too far. He cites to a Seventh Circuit case called U.S. v. Freeman, and he says that the standard for knowing use of false testimony, perjured testimony, amounts to a negligent standard of care, that if the prosecution knew or should have known. Well, incidentally, I looked at his case, Freeman. I saw that, and I looked at the case that Freeman cited to, which was U.S. v. Sada, and the citation is in Freeman. And it does say that, and I traced it back. And all those cases in the Seventh Circuit go back to Napaway, the leading case from the U.S. Supreme Court. Well, Napaway never says anything about know or should have known. It says knowing use. In the Ninth Circuit case, probably the most liberal district of all the federal circuit courts in this country, the Ninth Circuit itself still requires a knowing use of perjured testimony. The courts of Illinois, which I cited to you, require a formulation that's equivalent to a knowing use of perjured testimony. So where did this know or should have known come from? It's in the Seventh Circuit, and only in the Seventh Circuit. It's an outlier. It's not Illinois law. It's not something that this court should consider or apply. Unless this court has any questions, the people of the state of Illinois respectfully request that this court affirm the trial court's dismissal of this post-conviction petition. Your Honors, defunding of affairs is not a procedural default, and the state has an obligation to disclose, yet has not done so. That's because the defendant has every right to rely on the fact that once false testimony has been presented by the state, and the state knows about it, and our allegation here is that it's actually known. So it's complaints about the Seventh Circuit beside the point. What do you have to say about his forfeiture argument? The fundamental fairness, Your Honor. And, you know, I'd start with cases like C. Lahr from the 80s. That was a case where the evidence all came out in a post-trial motion, yet was brought, was argued for the first time in post-conviction, and the court found fundamental fairness required addressing it. There, the concern looked to the gravity of the argument. That's been refined more in recent years. So you get to cases like Jemerson in 1995. There, the – that was a case where – Does fundamental fairness mean that whatever you do not bring out under direct appeal, you could just bring it some other time? Is that what fundamental fairness means? In the very narrow situation is where the state has an obligation to disclose something, and yet has not, because the state's better to meet its obligation to disclose. In this case, to disclose – I know. This is something you knew from the beginning. I'm sorry. I was going to say, even if it's immaterial to the defendant's conviction? That – to answer your question first, Justice Lampkin, we believe that it's material here because what would follow from that suppression hearing? Now, I think – But what if – I mean, the state asks, and the judge asks, what would have followed from the suppression hearing? First, it's Mr. Fountain's statements that occurred shortly after the arrest. Those statements the state later, in closing arguments, gets to argue are the motive of the case. Second, we have evidence from the car. That's the glove and the trunk. Now, I would agree that if this got to an evidentiary hearing, the state could then plead and prove that there was some intervening event that attenuated the illegal arrest and the illegal search. Perhaps they can show that with a warrant. But is there burden to plead and prove it? At this – and because the court was misled by the detective's testimony into giving attenuated results to this hearing, the issue was rendered moot before. The state was prepared to plead and prove it then. They should have to plead and prove it in court now rather than simply assert that because they might have an affirmative defense in the future, that they have no burden to show so anymore. I just think the state's argument is vastly premature. At the very least, it certainly doesn't merit Mr. Found's claim, completely inarguable as would be required here. Maybe, and mostly, it comes up with some sort of answer they could raise as an affirmative defense at the next stage of proceedings. But not here, not under the very low threshold of the hottest standards, Your Honors. And, Justice Gordon, you had a question I didn't get to about forfeiture. No, I just wanted to hear what your argument was. I think you gave us your argument. All right. Thank you, Your Honors. All right. Well, you guys presented a very interesting case to us. Your arguments were very well done. Your briefs were very well done. We'll take the case under advice.